IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

UNITED STATES OF AMERICA,          :
                                   :
v.                                 :     Case No. 14-CR-20065
                                   :
VALERIANO J. ZARATE,               :
        Defendant.                 :
                                   :
_____:

MEMORANDUM OF FACTS AND LAW IN
SUPPORT OF DEFENDANT'S MOTION
PURSUANT TO 28 U.S.C. § 2255

COMES the pro se defendant Valeriano J. Zarate, hereinafter "Zarate" in the above entitled case and respectfully submits this memorandum of facts and law in support of his motion pursuant to 28 U.S.C. § 2255.

PRELIMINARY STATEMENT

On March 19, 2019, Mr. Zarate received notice from the United States Attorney's Office for the Central District of Illinois informing him of the discovery of unauthorized exparte communication between a staff member of the office and United States District Court Judge Colin S. Bruce. While the United States Attorney's Office takes the position that Judge Bruce did not have a disqualifying bias in the cases identified including Mr. Zarate's case, the numerous emails and content in the emails paints a colorful and complete portrait of Judge Bruce's disqualifying bias.

GROUND ONE: Mr. Zarate's conviction was obtained in violation of due process.

Argument

The Due Process Clause guarantees litigants an impartial Judge reflecting the principle that "no man is permitted to try cases where he has an interest in the outcome." See, Franklin v. McCaughtry, 398 F.3d 955, 959 (7th Cir. 2005)(quoting In Re, Murchison, 349 U.S. 133, 136 (1955)). In Mr. Zarate's case this guarantee was violated.

Prior to presiding over Mr. Zarate's criminal case, Judge Bruce was the First Assistant United States Attorney for the Central District of Illinois. He held that position from 2010 through 2013. He then ascended to the bench and received his commission on October 2013, and was sworn in on November 4, 2013. Judge Bruce took an oath to administer justice impartially then poo pooed on that oath by abandoning neutrality through his deliberate and repeated unauthorized exparte communication with his former collegues at the United States Attorney's Office for the Central District of Illionois. The numerous emails discovered between Judge Bruce and staff at the United States Attorney's Office show a clear view into the mindset of this Judge regarding his bias for defendants and his favortism for the prosecuting attorneys he once worked with. It is clear from these emails that Judge Bruce believes he and the United States Attorney's Office are working in tandem in the prosecution of cases. In one email between Judge Bruce and Assistant United States Attorney Elly Peirson, Judge Bruce states:

"My bad, you're doing fine, let's get this done" See Exhibit- A

2

Judge Bruce has difficulty seperating himself from the prosecuting attorneys duties. He believes he is still in a supervisory position over the prosecuting attorneys he once supervised. In another troubling email between Judge Bruce and a staff paralegal at the United States Attorney's Office, Judge Bruce writes:

> "I work hard not to try any of the cases. I actually have a sign on the bench from Judge Baker that says - DO NOT TRY THE CASE - when I'm not making internal jokes or when I'm not completely bored, lots of times I am cringing. I really cringed when an inexperinced DOJ attorney starting crossing the defendant in this case...during this cross-examination, I keep wanting to say, seriously? that is your plan? Repeat the testimony of the defendant as though it was fact and then say...Right?"

See, Exhibit - B

These are Judge Bruce's own words. He wrote them and they give a clear view into his mindset and into the degree of his partiality for the DOJ attorneys. Judge Bruce does not want cases to be tried. They bore him so during trials and other proceedings he is making internal jokes to himself. In that same email judge Bruce continues:

> "and if you were in the courtroom, yes, I would be giving you looks that would make you crack up." id.

No defendant that comes before Judge Bruce can reasonably expect to have a fair and just proceeding uninfected with Judge Bruce's bias. Judge Bruce accepted Mr. Zarate's guilty plea pursuant to the Government's Rule 11(c)(1)(c) Plea Agreement on April 17, 2015. The guidelines range that applied to Mr. Zarate was 188 - 235 months. That was included in the Plea Agreement and discussed during the change of plea hearing. there was no other discussion of a higher guidelines range. Both the Government and Mr. Zarate agreed and Judge Bruce accepted his guilty plea. Unfortunately,

Mr. Zarate wa not aware, at this time, that Judge Bruce had a disqualifying bias against defendants and in favor of the DOJ attorneys. Judicial bias is among the kind of structural errors which implicate both the mental fairness of the trial and society's perception of the integrity of the process. See, United States v. Harbin, 250 F.3d 532, 543 (7th Cir. 2001). Justice must satisfy the appearance of justice. See, Offutt v. United States, 348 U.S. 11 14, 99L.Ed 11, 75 S.Ct 11 (1954). In this and others that Judge Bruce presided over, that appearance is blurred by Judge Bruce's conduct.

Because it is more likely than not that Judge Bruce infected these proceedings which related to Mr. Zarate by willfully engaging in unauthorized exparte communication with the United States Attorney's Office, Mr. Zarate has filed a motion asking this Honorable Court to compel the Government to disclose all unauthorized exparte communications between Judge Bruce and the United States Attorney's Office, its staff, or associates with interest in this case. That motion is currently pending. Additionally, Mr. Zarate has filed a request for disclosure under the provisions of the Freedom of Information Act. That request was denied. See, Exhibit-C. Despite the denial, Mr Zarate has attained a copy of an email between Judge Bruce and United States Probation Officer - Gwen M. Powell which Officer Powell asks Judge Bruce to inform Mr. Oscar Martinez who is on pretrial supervision the seriousness of adhereing to the terms of his pretrial release. Mr. Oscar Martinez was a cooperating witness for the Government on Mr. Zarate's case. See, Exhibit - D.

GROUND TWO:   Mr. Zarate's sentence was imposed in violation of due process

On April 17, 2015, Judge Bruce accepted Mr. Zarate's guilty plea

pursuant to the Government's Rule 11(c)(1)(c) plea agreement which stipulated to a sentencing range of 188 - 235 months imprisonment, followed by 5 years of supervised release. While the Government knew or should have known of any qualifying prior convictions to raise Mr. Zarate's minimum mandatory there was no mention of any prior conviction. The Government also had more than ample time and resources to investigate any qualifying prior convictions in order to file the required notice inder 21 U.S.C. § 851, but failed to do so. The plea agreement was binding between the Government and Mr. Zarate. Plea agreements are contracts, and should be interpreted according to principles of contract law. like other contracts, plea agreements should be enforced consistent with the intent of the parties and the language of the agreement. See, United States v. Henandez, 544 F.3d 743, 750-51 (7th Cir. 2008). If this case had been before any Judge, other than Judge Bruce, the Government would not had been able to breach the plea agreement and then cover that breach with an amended plea agreement increasing the minimum mandatory sentence and the originally stipulated sentence range of 188 - 235 months. In fact, even if Judge Bruce rejected the originally stipulated sentence in the first plea agreement, he would have been required by Rule 11(c)(5) to advise Mr. Zarate and allow him to withdraw his guilty plea. Here, the Government alleged, on the day of sentencing, that it discovered Mr. Zarate had a qualifying prior drug conviction that increased his minimum mandatory to 240 months. The Government knew that in order to push ahead with a 240 month sentence after already stipulating to a 188 - 235 month range, it would have to withdraw the plea agreement and file a notice of prior conviction under 21 U.S.C. § 851 before trial or before a plea of guilty. However, before Judge Bruce, the Government knew it could get around this requirement by amending the original

5

plea agreement's stipulated sentence to 240 months and their Judge would allow it.

Under 21 U.S.C. § 851 "no person who stands convicted of an offense... shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the Court...stating in writing the previous conviction(s) to be relied upon." id. Congress specifically imposed the requirement under the Controlled Substance Act that a defendant may not be subjected to penalty enhancements due to his prior convictions unless he is given notice before he proceeds to trial or pleads. See, United States v. Burden, Case No. 1:16-cr-097 (W.D. OH, Feb 15, 2017): United States v. Edwards, Case No. 1:16-cr-081 (W.D. OH Feb 15, 2017).

Up to now, the Government was successful in their circumventing the § 851 requirement of filing a notice before trial or a guilty plea in order to press for a 240 month sentence. Not suprizing since all of the unauthorized exparte emails between Judge Bruce and the United States Attorney's office reveal his mindset, his bias for defendants and his favortism for the prosecuting attorneys. In United States v. Speed, case No. 14-CR-20056 (C.D. Ill) a paralegal from the United States Attorney's office supplied Judge Bruce with a copy of a just filed appellate brief, Judge Bruce followed up by complimanting the assistant United States attorney for his argument in the Armour case and advised him to use the same argument in the Speed case. Judge Bruce's own words were "well done, sir, Well Done." Judge Bruce has a vast interest in how the United States Attorney's office fares in cases. Judge Bruce has even displayed how upset he was when the he had not yet received his "seal" from the United States Attorney's office. This symbiotic relationship between Judge Bruce and

6

the United States Attorney's office for the central district of Illinois is undeniable and troubling. Judge Bruce and his collegues have placed their fist on the scales of justice tipping it in their favor.

## CONCLUSION

For the reasons known and stated in this petition, this Honorable Court should grant this petition vacating the conviction or in alternative vacating the sentence, appointing counsel and setting this matter for resentencing according to the original plea agreement and its stipulated sentencing range of 188 - 235, and current 3553(a) factors.

March 12, 2020

Respectfully submitted,

*/s/ Valeriano Zarate*

Valeriano J. Zarate, pro se
Reg. No. 19695-026
FCI-Milan
P.O. Box 1000
Milan, MI  48160